# VICKSBURG & MERIDIAN RAILROAD CO. *v.* B. T. LIGON.

### Damages — Excessive Verdict.

Damages to adjacent property caused by the direct result of a fire built by the employees of a Railroad Company on its right of way is held not to be excessive, when such damages as charged in the bill of complaint are impliedly, if not expressly, admitted to be true.[1]

### Negligence — Master and Servant.

The employees of a Railroad Company, while at work on the right of way, built a fire by which to warm themselves for the better handling and accomplishing the work for their employer, this being their uniform practice on cold days. They were under the supervision of a section boss of the company. Not having carefully guarded the fires it spread and caused considerable damage to adjacent property. *Held* to be gross negligence of the employees, and the Railroad Company liable therefor.[2]

---

[1]

The high court will not disturb a verdict for damages in an action *ex delicto,* where it is not apparent that the jury misapplied the law, nor misunderstood the facts, nor had been influenced by their prejudices or passions. N. O., J. & G. N. R. Co. *v.* Statham, 42 Miss. 608; N. O., J. & G. N. R. Co. *v.* Hurst, 36 Miss. 660.

In actions sounding in damages, where the law furnishes no legal rule of measurement, save the discretion of the jury upon the evidence before them, the courts will not disturb the verdict upon the ground of excessive damages, unless it be so flagrantly improper as to evince passion, prejudice, or corruption in the jury. N. O., J. & G. N. R. Co. *v.* Hurst, 36 Miss. 660; M. & C. R. Co. *v.* Whitfield, 44 Miss. 466.

And the rule is the same, where the jury are by law authorized to assess a fine. State *v.* Blennerhassett, Walk. 7.

This court will not trench upon the exclusive province of the jury as to the *quantum* of damages, but where the record shows that the jury proceeded upon wrong premises, and the court below contributed to the error, and that the verdict was the result of haste, inconsiderateness, or intemperance a new trial will be granted. Myers *v.* Farrell, 47 Miss. 281.

Where the law furnishes no rule of measurement the court will not disturb a verdict as excessive, unless it be shown to be so flagrantly improper as to evince passion, prejudice, partiality, or corruption. Where different minds might, and probably would, arrive at different results as to the damages, and nothing inconsistent with an honest exercise of judgment appears the verdict will not be disturbed. Railroad Co. *v.* Caruth, 51 Miss. 77.

A judgment on a verdict in excess of the damages proved will be affirmed by the Supreme Court only on condition of appellees remitting the excess. Wagner *v.* Ellis, 85 Miss. 422, 37 So. 959.

This was a suit against the Railroad Company for damages to property along the right of way of said railroad, caused by negligence of its employees. The employees of the road (section hands) were engaged in repairing the roadbed and laying of rails, and were working under a foreman or boss. A fire was built out of the old cross-ties by them on the railroad right of way, to warm by, as was the usual habit in cold weather, but the fire was not carefully attended to, and spread to the adjoining land of plaintiff, destroying a large number of panels of plank fencing, house, etc., amounting to $550, all of which was proven on the trial. Evidence showed that the employees made no attempt to put out the fire they had built up, when they stopped work that day, but went away leaving it burning.

A judgment was rendered against defendant company for $550, from which they appeal.

APPEALED from Circuit Court, Hinds county, first district, T. J. WHARTON, Judge.

2

The negligent use of fire renders the party so using it liable for damages resulting to others therefrom, and in an action therefor, while the burden of proof is on the plaintiff to show negligence, this burden is met when it appears that the fire was kindled at a time and place when it was likely to spread or to pass beyond control, or that it was afterward left without proper care. In such case, negligence is *prima facie* established independently of section 1059, Code 1880. So held in this case, where the burning of plaintiff's property resulted from the act of an employee on a moving train of defendant in throwing from the locomotive a burning piece of wood, which fell on ground thickly covered with grass. Railroad Co. *v.* Gray, 62 Miss. 383.

Section 1054, Code 1880, declaring that railroads shall be liable for damages resulting from the negligence or mismanagement of their agents, engineers, or clerks is substantially an affirmance of the common law on that subject. Railroad Co. *v.* Gray, 62 Miss. 383.

A railroad company, which sets out a fire on its right of way so near buildings as to endanger them, is negligent if it fail to guard the fire for the entire time such danger exists. Brister *v.* Illinois, etc., R. Co., 84 Miss. 33, 38 So. 678.

Evidence that defendant's employees set out a fire on a windy day on defendant's right of way, which was covered with dry grass and adjoined plaintiff's premises on which there was also dry grass, supports a finding of negligence. M. & O. R. Co. *v.* Stinson, 74 Miss. 453, 21 So. 14.

The owner of a grove injured by a fire negligently set on the adjoining right of way of a railroad by the section men is not guilty of contributory negligence because he failed to keep the grove free from grass. M. & O. R. Co. *v.* Stinson, 74 Miss. 453, 21 So. 522.

Affirmed, May 26, 1884.

*Attorneys for appellant, Nugent & McWillie.*

*Attorney for appellee, Frank Johnston.*

Brief of Nugent & McWillie:

This is a singular case. The point is to hold a Railroad Company to liability for damages done by fire to the farm and fencing of appellee for the reason that the fire was kindled on the right of way by *laborers* upon the track of the Railway Company, and was communicated thence to appellee's meadow, and could have been put out readily by such laborers.   *   *   *

The grounds of the action are stated to be these:

Mrs. Ligon owned a large place adjacent and next to the defendant's roadway and track.

As a necessary means of operating its railroad the company employed a large number of hands called section hands, who, on the day named, were engaged in repairing the track under the control and supervision of an agent and employee of defendant, known as a section-master, "who has general supervision of a large section of defendant's roadway and track, and who has the control, direction, and management of all the section hands assigned to his section, and who had, on the occasion stated, the control, management, and supervision of the large party engaged" in repairing the track opposite appellee's farm.

The weather was cold and temperature freezing, and the road-working party, having to use iron crowbars, built a large fire of old cross-ties on defendant's railroad track to "warm themselves and the better to perform the labor required of them," and so negligently and carelessly managed said fire that the same was communicated to the sedge grass on plaintiff's land, which burned and spread rapidly and consumed a great quantity of fencing.

That said fire was built by the direction or consent and approval of the section-master "in connection with and in furtherance of the work of repairing the track," using for that purpose old cross-ties left by appellant on the road for the purpose of being burned.

The section hands were in the habit of burning said old cross-ties "not only for their necessary comfort in cold weather, but as

a means of getting rid of the useless and abandoned cross-ties," and this was well known to appellant, and reasonably within its contemplation of appellant, " in view of the character of work in cold weather required by the section boss."

The section boss was a general agent of appellant entrusted with the charge and supervision of an entire section of the roadway and having full control and direction of the hands.

The employees are personally insolvent and cannot be made by law to respond in damages to the injury done the plaintiff.

\* \* \*

The effort is to subject the company to liability because of the fire built by laborers on its roadway. The rules governing this class of cases are well known and have been clearly settled thus: The true test by which to determine the liability of the master or employer for the negligent or wrongful acts of the servant or employee   \*   \*   \*   is, was the wrongful or negligent act done in the course and scope of the employment of the servant or agent?   If it was the employer is liable.   But if the employee does any act *out of his employment,* as committing an assault with his own hands upon a stranger, and independent of his employment, the employer is not liable.   Johnson *v.* Chicago R. Co., 8 Am. & Eng. R. Cases, 209.   See 23 Pick. 24.

An employer is liable for the torts of an employee *only* when they are committed in the course of his employment.   The difficulty has been to determine what act should be deemed within the course of his employment.   \*   \*   \*   The rule is that an employer is not liable for a willful injury done by an employee, though done while in the course of his employment, unless the employee's purpose was to serve his employer by the willful act.   Where the employee is acting in the course of his employment, the employer is not liable, even for the employee's negligence, and the mere purpose of the employee to serve his employer has no tendency to bring his act within the course of his employment.   When a female servant, having authority to light fires in a house, but not to clean the chimneys, lighted a fire for the sole purpose of cleaning the chimney, it was held that her employer was not liable for an injury caused by her negligence in lighting the fire.   Marion *v.* Chicago R. Co., 8 Am. & Eng. R. Cases, 179; 1 Am. & Eng. R. Cases, note p. 466; 2 Kent's Commentaries, 259; 48 Miss. 112; 26 Miss. 487.

It cannot be said, and the declaration does not allege, that the

fire was *kindled* in the course of the servant's employment. It is not suggested that the particular injury or act or trespass of the employee was done by the command of the employer or with his assent. The laborers were merely *menial* servants. The tort of the laborers, if any, consisted not in building the fire and *warming themselves at it,* but in not taking care to prevent its being communicated to the grass around and near it.  *  *  *

It is clear, however, taking the declaration most strongly against the pleader, that the kindling of the fire was wholly outside of the servant's employment and was made to effect an *independent purpose of their own,* and not to execute the orders of the company.

*  *  *  If the servant, *wholly for a purpose of his own,* disregarding the object for which he is employed, and not intending by his act to execute it, does an injury to another not within the scope of his employment, the master is not liable. But if the act be done in the execution of the authority given him by his master, and for the purpose of performing what the master has directed, the master will be responsible, whether the wrong done be occasioned by negligence or by a wanton or reckless purpose to accomplish the master's business in an unlawful manner. Howe *v.* Newmarch, 12 Allen, 56, 57.

In Turberville *v.* Stamps, 1 Ld. Raym. 264, Lord Holt says: "If the defendant's servant kindled the fire in the way of husbandry and proper for his employment, though he had no express command of his master, yet his master shall be liable to an action for damage done to another by the fire, for it shall be intended that the servant had authority for his master, it being for his master's benefit." So in Tilater *v.* Phippard, 63 Eng. C. L. 346, a fire was knowingly lighted by a man's servant in his master's close, and permitted to extend, by negligence, to the close of a neighbor, and the master was held to be bound. In both these the fires were kindled in the way of husbandry, that is, the stubble was being burned by the master's command. Here the fire was not necessary or in the scope of the employment of the servant, and was not ordered.  *  *  *

Brief of Frank Johnston:

There is no new question of law presented by this case. The case turns on the application of the doctrine of the liability of a

master or employer for the acts of negligence of his servants committed in the prosecution of the business of the master.

There can be no controversy about a single material fact in the case. On a cold wintry day, the ground frozen, a squad of section hands under the command of a section-master, or "boss," engaged in repairing the appellant's road, built a fire, as was their custom, to warm themselves by in the progress of their work. The fire was built on the roadway, or right of way, six or eight feet from the rails, on the north side of the track; the roadway on each side was covered with a growth of heavy bermuda grass, and sparse sedge grass. This caught from the fire built by the section men, and communicated with the grass on the plaintiff's land and burned her barn and houses and fencing, as stated by the witnesses.

The section men and their boss were in plain view of the fire as it crept to the plaintiff's land. Indeed, two or three of them were warming themselves by the fire built of cross-ties while the grass was burning and spreading to the adjoining land. It would have been an easy thing to have extinguished it, as explained by Mr. Ligon, and it was gross carelessness not to have done so. I will add that it is shown by the evidence that it was the habit or custom of the section men to use fire in winter time, and it has also been testified that the fire contributed greatly to their comfort and enabled them to better perform their work. These are, briefly stated, the material facts. * * *

It is proven that the grass caught fire from the cross-tie fire. While Mr. Ligon did not know it from having seen it catch, yet he traced the blackened and burned pathway up to the very coals of the cross-tie fire and nowhere else, and thus demonstrated its starting point. * * *

The case only calls for a correct application of the legal principle of the master's liability for the negligence of his servant.

Thompson says the master is liable for the acts of his servant "while acting about his business," resting on the principle that every one must so conduct and manage his business so as not to injure others. Thompson on Negligence, p. 884, § 1. * * *

In Howe v. Newmarch, 12 Allen 49-57, cited by Judge Cooley, Hoar, justice, said: "If the servant, wholly for a purpose of his own, disregarding the object for which he is employed, and not intending by his act to execute it, does an injury to another

not within the scope of his employment, the master is not liable."
Cooley, p. 537.

Thus the rule is guardedly and carefully expressed. And so
also in section 2, p. 535.

But in the case at bar, the fire for the section men, according
to the proof, was not only necessary for their comfort, but it
enabled them the better to perform their work for the company.

Moreover, it was their custom and habit to have a fire in cold
weather. I may add that no section hands, where fuel is avail-
able, would be without a fire in freezing weather. They handle
iron tools and iron rails, and a fire, if not absolutely indispensible,
certainly would greatly aid them in their work.

Again, their having a fire was certainly within the contempla-
tion of the company. The latter must have known of the habit
and custom of the track repairers and section men in this respect,
and suffered or permitted it.

The general roadmaster passed this squad of hands *twice* that
day, and saw their fire and never thought of objecting to it.
*   *   *

But, logically, the contention of the appellant comes to this, that
it did not employ the section men to build a fire, but to repair the
track, and, therefore, the company is not liable. It made a *prima
facie* case that the Railroad Company knew and permitted it, to
show the habit and custom of these employees in that respect.
*   *   *

OPINION.— CHAMBERS, J., delivered the opinion of the court:

It is impliedly, if not expressly admitted that the amount of
damages found is not excessive, that it was the direct result of the
fire which sprung from the negligence and want of care of the
railroad hands by whom it was kindled, but it is insisted that the
facts did not warrant the application of *respondeat superior,* since
in building the fire the hands acted for their own comfort, and
not for that of the superior, or while properly conducting his busi-
ness.

We rest our conclusion wholly on the following facts testified
to by two witnesses: The weather was quite cold, and the hands
under the control of a section boss were handling iron tools, and
obliged to do so in order to execute their master's business. In
doing this their uniform practice was to kindle fires in order

thereby the better to do that business. They of course availed themselves of these fires for warming their own persons,- but this was immaterial if such warning was necessary to and promotive of the work which they were employed to do. They had never been seen doing such work without these fires. Their orders were, so one of their own number proves, always to carefully guard the fires. They on the contrary were guilty in the present case of gross negligence in reference to them.

We cannot say the jurors erred in holding their superiors liable.

*Affirmed.*